IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ADVANCED MEDICAL OPTICS, INC., )
a Delaware corporation, )
　 )
Plaintiff, )
　 )
v. ) Civil Action No. 03-1095-KAJ
　 )
ALCON LABORATORIES, INC., )
a Delaware corporation, and )
ALCON MANUFACTURING, LTD, )
a Texas Limited Partnership. )
　 )
Defendants. )

## MEMORANDUM OPINION

Richard L. Horwitz, Esq., David E. Moore, Esq., Potter Anderson & Corroon LLP,
Hercules Plaza, 6th Floor, 1313 North Market Street, P.O. Box 951, Wilmington,
Delaware 19899; Counsel for Plaintiff.
　 Of Counsel: A. James Isbester, Esq., Gillian W. Thackray, Esq., Isbester &
　 　 Associates, 3160 College Avenue, Suite 203, Berkeley, California 94705.

Josy W. Ingersoll, Esq., Melanie K. Sharp, Esq., Young Conaway Stargatt & Taylor,
LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware
19801; Counsel for Defendants.
　 Of Counsel: Robert G. Krupka, Esq., Kirkland & Ellis LLP, 777 South Figueroa
　 　 Street, Los Angeles, California 90017;
　 　 　 Linda S. Resh, Esq., Kirkland & Ellis LLP, 200 East Randolph
　 　 Drive, Chicago, Illinois 60601.

December 16, 2005
Wilmington, Delaware



JORDAN, District Judge

## I.   INTRODUCTION

American Medical Optics, Inc. ("AMO") brought this patent infringement suit against Alcon Laboratories, Inc. and Alcon Manufacturing Ltd. (collectively, "Alcon"). After a two week trial, the jury found that Alcon had willfully infringed two of AMO's patents, U.S. Patent Nos. 5,700,240 (issued Dec. 23, 1997) (the "'240 patent") and 6,059,765 (issued May 9, 2000) (the "'765 patent") and that neither of the patents were invalid. Before me now are several post-trial motions brought by Alcon seeking: (1) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (Docket Item ["D.I."] 337); (2) Judgment as a Matter of Law of Obviousness of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I. 339); (3) New Trial Based on the Exclusion of a Rebuttal Witness (D.I. 343); (4) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '765 Patent or in the Alternative, a New Trial (D.I. 341); (5) Judgment as a Matter of Law Regarding the Jury's Willfulness Finding or in the Alternative, a New Trial (D.I. 335); and (6) Judgment as a Matter of Law on Damages or in the Alternative, a New Trial (D.I. 334). Also before me are AMO's Motions for Attorney Fees and Enhanced Damages (D.I. 312) and for a Permanent Injunction (D.I. 310), and Alcon's Motion for a Stay of Injunction pending appeal (D.I. 316). For the reasons set forth herein, I will deny all of Alcon's motions for judgment as a matter of law and a new trial, I will grant AMO's motions for enhanced damages, attorneys' fees, and a permanent injunction, and I will grant Alcon's motion for a stay of injunction pending appeal.

## II.    BACKGROUND

The background of this case has been set forth in a prior opinion, and will not be set forth in detail here. *See Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 370, 373-75 (D. Del. 2005) (claim construction opinion).

Both patents cover apparatuses and methods related to the surgical removal of cataracts using phacoemulsification. "The '240 patent discloses a method and apparatus for varying the ultrasonic power delivered to the surgical handpiece during a phacoemulsification procedure." *Id.* at 375 (citing the '240 patent). The feature claimed by the '240 patent was referred to at trial as "occlusion mode." (*See, e.g.,* Trial Transcript ["Tr."] at C-205:2-5.) "The '765 patent relates to a fluid management apparatus [and a] . . . method for reducing expandable gas in . . . a fluid management system." *Advanced Med. Optics*, 361 F. Supp. 2d at 375 (citing the '765 patent).

The parties tried the issues of infringement and invalidity to a jury in a two week trial. At the end of the trial, the jury returned a verdict finding that the accused Alcon AdvanTec Legacy and Infiniti devices infringed claims 5 and 6 of the '240 patent, that Alcon had induced infringement of claims 1 and 3 of the '240 patent, and that Alcon had contributed to infringement of claims 5 and 6 of the '240 patent by selling consumables used as part of the Infiniti device. (Tr. at J-8:8-18.) The jury also found that the Infiniti infringed claim 13 of the '765 patent, that Alcon induced infringement of claim 19 of the '765 patent, and that Alcon had contributed to infringement of claim 19 by selling the Infiniti and associated consumables. (Tr. at J-8:19-9:2.) The jury found that the infringement of both patents was willful. (Tr. at J-9:22-25.) Finally, the jury found that

2

none of the asserted claims were invalid. (Tr. at J-9:3-12.) The jury awarded lost profits and reasonable royalties for the infringement of the '240 patent and reasonable royalties for the infringement of the '765 patent. (Tr. at J-9:13-21.)

## III. STANDARD OF REVIEW

Judgment as a matter of law should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." Fed. R. Civ. P. 50(a). The review of the sufficiency of the evidence must take the record as presented to the jury. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1199 (3d Cir. 1993). The proper question is "whether there is evidence upon which a reasonable jury could properly have found its verdict." *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)).

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The court may order a new trial "where there is insufficient evidence to support the verdict or where the verdict is against the weight of the evidence." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999). The court may also order a new trial if a party has been prejudiced by the improper exclusion of evidence. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).

3

## IV.    DISCUSSION

### A.    '240 Patent Infringement

The jury concluded that Alcon's AdvanTec Legacy and Infiniti phacoemulsification devices infringed claims 1, 3, 5, and 6 of the '240 patent.  Alcon asks for judgment as a matter of law that these claims were not infringed, or alternatively, for a new trial.  Because the weight of the evidence before the jury supported its conclusion that Alcon's devices infringe, I will deny Alcon's motion.

Alcon first argues that the verdict cannot stand because it is based on expert testimony that failed to apply the correct legal standard for patent infringement.  (D.I. 338 at 11-13.)  According to Alcon, the infringement analysis by AMO's expert, Harold Walbrink, ignored my construction of the '240 claims.  (*Id.*)  Alcon argues that Walbrink was required to explain the claim construction language and to testify explicitly in terms of that language.  But, while that may be the better method, Alcon points to no case requiring that structural formality.  Walbrink's testimony shows that he used the claim construction in his analysis of the '240 patent.  (Tr. at C-148:11-13, 150:23-25.)  Thus, his expert opinion was based on the claims as construed, and that opinion, coupled with the construed claims given to the jury and the facts presented concerning the accused devices, was more than sufficient to support a finding of infringement based on the correct legal standard.

Alcon next argues that AMO has presented no evidence that any doctor ever used the accused occlusion mode feature on the Alcon devices.  (D.I. 338 at 14-20.)  As a result, according to Alcon, the jury's conclusions of indirect infringement of method

4

claims 1 and 3 (*id*. at 14-17) and direct infringement as well as contributory infringement of apparatus claims 5 and 6 (*id*. at 17-20) are not supported by any evidence. Alcon's main argument on this point is that AMO's direct evidence (*see* Plaintiff's Trial Exhibit ["PTX"] 278; Tr. at E-6:3-21, E-7:13-22, E-10:6-9) shows doctors using pulse mode, and that mode does not infringe the '240 claims because it merely turns the power on and off, which is outside the scope of the construed '240 claims. AMO counters that enabling pulse mode should be interpreted as a decrease in power rather than switching the power on and off, an interpretation that has some support in the trial record. (*See, e.g.,* PTX 181 at ALDE015347; PTX 207 at AMO00714 (Alcon operating manuals each describing power reduction resulting from changing either the stroke length or the pulse time).) But even if Alcon infringes only when the devices are used to decrease power in continuous mode, the jury was presented with considerable evidence that the devices are so used.

First, it is uncontested that, when enabled and set by the user, the accused devices all allow the user to vary the power. (Tr. at H-87:1-6, H-88:11-15.) Second, Alcon's operating manuals for the accused devices instruct customers on how to vary the power. (PTX 181 at ALDE015376-77; PTX 207 at AMO00714; Tr. at C-158:16-163:24.) Finally, Alcon advertised its occlusion mode features. (PTX 354; Tr. at F-196:25-197:16, F-219:25-227:6.) This circumstantial evidence supports the conclusion not only that the devices are capable of an infringing mode, but that they were actually used in that mode.

5

Alcon's pointing to individual doctors who do not use the mode does not require a different conclusion. The circumstantial evidence that doctors did use the accused devices in an infringing mode supports the jury's conclusion of direct infringement of claims 5 and 6 and indirect infringement of claims 1 and 3. The conclusion of contributory infringement of claims 5 and 6 is supported by the sale of handpieces and packs that are elements of the claimed invention and can only be used with the Infiniti device. Alcon's contention that the devices may be used in a noninfringing mode does not overcome the jury's implicit conclusion that the devices are, in fact, used in an infringing mode.

Alcon further argues that AMO provided no evidence that the Alcon devices were used to change the power when the vacuum reached a "particular numeric value," as required by the pertinent claim constructions. (D.I. 338 at 15; D.I. 363 at 16-17.) The cited evidence supporting the conclusion that doctors actually used the infringing mode overcomes that argument as well.

The jury's verdict was based on the correct legal analysis and was not against the weight of the evidence. Therefore, Alcon's motion for judgment as a matter of law of noninfringement of the asserted '240 claims or, alternatively, for a new trial will be denied.

B.    Obviousness of the '240 Claims

The jury concluded that the claims of the '240 patent were nonobvious in light of the prior art. Alcon asks for judgment as a matter of law that the asserted claims of the '240 patent are obvious, or alternatively, for a new trial. Because the weight of the

evidence before the jury supports its conclusion that Alcon had failed to prove obviousness by clear and convincing evidence, I will deny Alcon's motion.

Alcon brings this motion despite the fact that it failed to make a motion on this issue under Federal Rule of Civil Procedure 50 at the close of the evidence. Opposing AMO's motion on validity (Tr. at H-79:25-80:17), renewing its own motions on infringement (Tr. at H-179:2-3), and attempting to later include "the rebuttal against [its own] direct case" in these renewed motions (Tr. at I-3:18-25) are not sufficient for Alcon to squarely bring its invalidity arguments to the court's attention. By failing to make a Rule 50 motion on the issue at the close of evidence, Alcon waived the right to challenge the verdict on obviousness. *See, e.g., Hopp v. City of Pittsburgh*, 194 F.3d 434, 440 (3d Cir. 1999) (finding that a party waived an argument that it failed to include in its pre-verdict Rule 50 motion); *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1108 (Fed. Cir. 2003) (same).

But even if Alcon had preserved the obviousness issue, its motion for judgment as a matter of law would be denied because the jury had before it a record sufficient to conclude that Alcon had failed to prove obviousness of the '240 patent by clear and convincing evidence. Alcon's obviousness argument depended on combinations of prior art that included a Japanese patent application (the "Shimizu Reference"). AMO presented evidence that the Shimizu Reference was outside the scope of pertinent prior art because it does not teach a method for phacoemulsification or for eye surgery (Tr. at B-33:22-34:15, B-34:21-35:15) and may actually be inconsistent with the teaching of the '240 patent (Tr. at B-36:21-37:2). As a result, the jury could reasonably conclude that persons having ordinary skill in the art would not be motivated to combine the

7

Shimizu Reference with prior art phacoemulsification systems. That conclusion on its own defeats Alcon's obviousness position.

The alternative motion for a new trial also fails because the weight of the evidence concerning the inapplicability of the Shimizu Reference supports the jury's conclusion that Alcon had failed to prove obviousness by clear and convincing evidence.[1]

Therefore, Alcon's motion for judgment as a matter of law of obviousness of the asserted '240 claims or, alternatively, for a new trial will be denied.

C.    Exclusion of Shimizu as a Rebuttal Witness

Alcon seeks a new trial based on the exclusion of Kimiya Shimizu as a rebuttal witness. At trial, Alcon sought to call Shimizu, the author of the eponymous prior art reference used in Alcon's obviousness case, to rebut the testimony of B.J. Barwick, one of the inventors named on the '240 patent. Barwick testified that he had discussed phacoemulsification and occlusion mode with Shimizu but that Shimizu did not suggest the idea for occlusion mode and was not involved in its development. (Tr. at B-132:22-136:12.) Alcon claims that Shimizu would have contradicted Barwick's testimony and that this was relevant not for the issue of inventorship, but for the issue of obviousness

---

[1]In this motion on obviousness, Alcon also seeks, in the guise of a motion for a new trial, a reconsideration of my construction of the terms "variably controlling" and "for varying the ultrasonic power" in claims 1 and 5 of the '240 patent. (D.I. 340 at 28-29; D.I. 364 at 19-20.) Whether or not this is a proper issue for this post-trial motion, Alcon's arguments that the '240 prosecution history and the recent decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) require a change in my construction fail. The construction was based on the language of the claim itself, which stated that the power was "being provided" already and was inconsistent with power being turned on and off in response to the vacuum sensor. *Advanced Med. Optics*, 361 F. Supp. 2d at 382.

8

based on the Shimizu Reference. (D.I. 344 at 5-6, 11; D.I. 362 at 7-8, 11.) According to Alcon, Barwick's surprising testimony made Shimizu's testimony necessary, and Shimizu's exclusion prejudiced Alcon to such an extent that a new trial is warranted. (D.I. 344 at 8-11.)

Alcon argues that the exclusion of Shimizu's testimony allowed AMO to argue that the Shimizu Reference was not related to phacoemulsification and so did not support Alcon's argument that the claims of the '240 patent were obvious. (*Id.* at 11; D.I. 362 at 7-8.) This argument fails for at least two reasons. First, the relevance of Shimizu's proposed testimony to the obviousness argument is tenuous at best. Alcon argued to the jury that the reference was relevant prior art even without this testimony, and the scope of that reference is necessarily independent of the author's alleged involvement in the development of occlusion mode. Second, even if the testimony were relevant for obviousness, as Alcon argues, nothing in Barwick's testimony suddenly made such testimony necessary. As I said during trial, I do not accept Alcon's argument that it was surprised. (Tr. at F-48:11-23.) Alcon is the one that raised the Shimizu Reference as a critical piece of invalidity evidence, and, if Shimizu's testimony were truly important, then Alcon could and should have included him as a witness in their case in chief, thereby allowing AMO to prepare for his testimony.

Therefore, Alcon's motion for a new trial based on the exclusion of Shimizu's testimony will be denied.

D. '765 Patent Infringement

The jury concluded that Alcon infringed claims 13 and 19 of the '765 patent. Alcon asks for judgment as a matter of law that these claims were not infringed, or

9

alternatively, for a new trial.  Because the weight of the evidence before the jury
supported its conclusion of infringement, I will deny Alcon's motion.

Alcon first argues that the jury had insufficient evidence to conclude that the
accused device had an outlet "disposed along the housing longitudinal axis," as
required by claims 13 and 19.  (D.I. 342 at 7-11.)  I construed that limitation to mean
"placed through, on, over, or continuously beside or on a line or course parallel and
close to the lengthwise centerline of the housing." *Advanced Med. Optics*, 361 F. Supp.
2d at 387.  According to Alcon, AMO's infringement analysis effectively eliminated that
limitation from the claims, by eliminating the need for the outlet to be "close to" the
centerline (*id.* at 7-9), and also improperly combined it with the limitation requiring the
outlet to be below the pump (*id.* at 9-11).  On the first point, the jury was presented with
testimony from AMO's expert, Walbrink, that the outlet is one inch away from, and
therefore "close to," the centerline.  (Tr. at C-184:5-188:7.)  While Alcon's expert
disagreed that one inch is "close to" the centerline, the jury was entitled to credit
Walbrink's testimony and its own judgment that one inch was close enough to satisfy
the claim limitation.  On the second point, while Walbrink testified that he believed the
Infiniti outlet was positioned where it was so that it was below the pump (Tr. at C-
187:21-188:2), he never testified that he concluded that the outlet met the "disposed
along" limitation because it was below the pump.  Thus, contrary to Alcon's assertion,
Walbrink did not improperly combine claim limitations.

Alcon also argues that the jury had insufficient evidence to conclude that the
accused device had a structure equivalent to the one disclosed in the '765 patent as
corresponding to the "means for engaging and holding" limitation in claim 13.  (D.I. 342

10

at 11-15.) The structure corresponding to this means-plus-function claim is the frame, hinge mounted to a face, latch, and lip structures found in Figure 4 of the '765 patent. *Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 404, 412 (D. Del. 2005) (summary judgment opinion). Contrary to Alcon's position, Walbrink testified that Alcon's Infiniti device had a structure that was equivalent and interchangeable with the structure disclosed in the patent. (Tr. at C-174:17-21, C-190:11-191:5.)

Alcon contends that Walbrink's testimony is insufficient (D.I. 342 at 13-15) because it fails to provide the "particularized testimony and linking argument" about the insubstantiality of differences required for the jury to decide the issue of infringement under the doctrine of equivalents. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566-67 (Fed. Cir. 1996); *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1426 (Fed. Cir. 1989). Indeed, the jury must receive guidance on a limitation-by-limitation basis as to how an accused product infringes under the doctrine of equivalents. *Tex. Instruments*, 90 F.3d at 1566-67. However, the issue presented here is literal infringement of a means-plus-function claim. While the necessary analysis may be similar to that under the doctrine of equivalents, the Federal Circuit has yet to impose a heightened evidentiary requirement in the context of means-plus-function structural equivalents. *See Lucent Techs., Inc. v. Newbridge Networks* Corp., 168 F. Supp. 2d 181, 211-12 (D. Del. 2001) ("[M]ore generalized testimony from expert witnesses has been sufficient to establish literal infringement where Section 112, Paragraph 6 limitations are involved.") (citing *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed. Cir. 1991)). Even so, unlike the witnesses in *Texas Instruments*, 90

11

F.3d at 1567-68, and *Lear Siegler*, 873 F.2d at 1426, Walbrink directly addressed the issue of structural equivalence, and his testimony, coupled with the other evidence about the accused devices, was enough to support the jury's conclusion of literal infringement.

Because the jury's infringement verdict was supported by the weight of the evidence, Alcon's motion for judgment as a matter of law of noninfringement of the asserted '765 claims or, alternatively, for a new trial will be denied.

Alcon also seeks a new trial because the conclusion that the '765 patent reads on the Infiniti device means both that the "disposed along" limitation is indefinite (D.I. 342 at 15-17) and that claims 13 and 19 are anticipated by the Alcon Legacy (*id*. at 17-26). Both arguments fail. First, the fact that Alcon disagrees with the jury's implicit factual determination that the Infiniti outlet was "close to" the centerline does not render the claim term indefinite. Second, as to anticipation, the jury was presented with evidence that the Legacy lacked a chamber (Tr. at H-153:18-24), that if it did have a chamber it would not be vertically oriented (Tr. at H-154:6-14), and that if it did have a chamber it was not generally circular as required by the claim construction (Tr. at H-154:17-155:7). Again while Alcon's expert disagreed, the jury was entitled to credit this testimony. Because the jury's conclusion does not go against the weight of the evidence, Alcon's motion for a new trial on indefiniteness and anticipation will be denied.[2]

---

[2]As for the '240 patent, Alcon seeks, in the guise of a motion for a new trial, a reconsideration of my construction of the term "disposed along." (D.I. 342 at 29-30.) Again, Alcon fails to show that the recent decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) made my construction incorrect as a matter of law. *Advanced*

12

E.     Willfulness

The jury found that Alcon had willfully infringed the '240 and '765 patents. Alcon asks for judgment as a matter of law that its infringement was not willful, or, in the alternative, for a new trial. Because the jury's decision on willfulness was supported by the weight of clear and convincing evidence, I will deny Alcon's motion.

1.     The '240 Patent

For the '240 patent, Alcon argues that it discovered the patent on its own, and obtained opinions from in-house and outside counsel that the patent was invalid before it implemented occlusion mode on its machines. (D.I. 336 at 9-10.) However, a finding of willfulness is based on the totality of the circumstances, and an opinion from counsel is not an automatic shield. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190-91 (Fed. Cir. 1998). Here, the jury was presented with clear and convincing evidence that Alcon intentionally copied the occlusion mode from AMO's Sovereign machine, that the opinions of counsel were inadequate, and that Alcon did not rely on the opinions.

Before it introduced occlusion mode on its machines, Alcon had access both to the '240 patent (Tr. at E-81:21-23, H-85:5-6) and to an AMO Sovereign that it received through a third party (Tr. at D-25:3-29:17). Alcon prepared an extensive report on the Sovereign, including the implementation of occlusion mode. (PTX 127 at 4.) While Alcon argues that it made this report on the Sovereign occlusion mode only after

_____

*Med. Optics*, 361 F. Supp. 2d at 387-90.

13

receiving the invalidity opinion from outside counsel (D.I. 336 at 16), it is still evidence to support the jury's conclusion that infringement was willful.

Concerning the invalidity opinions, AMO presented evidence that the lawyers' reliance on the Shimizu Reference was not only incorrect but also incompetent because the reference was not in the relevant field (Tr. at E-103-05, G-21-23, G-60-61), and that Alcon did not rely on the opinion of outside counsel because it continued its development efforts after learning of the '240 patent but before the opinion letter was received (PTX 46; PTX 94). On the latter point, while Alcon's in-house counsel testified that he knew what the outside counsel's opinion would be before the letter was formally written (Tr. at F-241:2-24), the jury was entitled to discredit his testimony. Even with that offered explanation, however, the evidence of continuing work on occlusion mode supports the conclusion that Alcon was bent on copying that patented feature and did not actually rely on the opinion of counsel concerning the '240 patent.

### 2. The '765 Patent

For the '765 patent, Alcon argues that it learned of the '765 patent when AMO brought this lawsuit, and it promptly obtained an opinion from outside counsel that its machines did not infringe the patent. (D.I. 336 at 16-18.) But the jury was presented with clear and convincing evidence that Alcon intentionally copied the fluidics system from AMO's Sovereign machine before it sought an opinion letter.

Alcon had access to a Sovereign machine that it received through a third party. (Tr. at D-25:3-29:17.) Alcon tested forty Sovereign tubing packs, which incorporated the fluidics system claimed by the '765 patent, (PTX 132; Tr. at D-58), and photographed the Sovereign cassette (PTX 132 at 7). Along with the machine, Alcon

14

had access to the Sovereign operator's manual (*see* PTX 127 at ALDE052477; PTX 131 at ALDE052531 (documents reviewed by Alcon engineers that refer to the manual)), and the manual listed the patents covering the Sovereign, which included the '765 patent (Tr. at E-24:18-22).[3]  AMO presented evidence that the design of Alcon's fluidics system changed after Alcon had access to the Sovereign.  (Tr. at E-58-59; PTX 124.)  All of this occurred before this lawsuit was filed and before Alcon sought an opinion of counsel concerning infringement.  Based on all of the evidence, the jury was entitled to conclude that Alcon intentionally copied the Sovereign system, while knowing from the manual that the system was patented.

### 3.   Conclusion

Accordingly, as to both the '240 and '765 patents, the jury's determination of willfulness was supported by evidence that a rational jury could view as clear and convincing.  Therefore, Alcon's motion for judgment as a matter of law or, alternatively, for a new trial will be denied.

## F.   Damages

### 1.   Lost Profits for the '240 Patent

The jury awarded lost profits for a percentage of the sales of Alcon AdvanTec Legacy and Infiniti phacoemulsification devices as a remedy for the infringement of the '240 patent.  Alcon seeks judgment as a matter of law that AMO is not entitled to any lost profits for infringement of the '240 patent, or, alternatively, for a new trial, because

---

[3]While the manual listing is not sufficient to meet the marking requirements of 35 U.S.C. § 287, it is sufficient to show notice in support of willfulness.  *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1415 (Fed. Cir. 1996) (finding that notice from the Patent Office Official Gazette could support a finding of willfulness).

according to Alcon, AMO has failed to establish the absence of acceptable non-infringing substitutes. (D.I. 331 at 8-19.) Because the jury's implicit conclusion on this issue is supported by the weight of the evidence, Alcon's motion will be denied.

Alcon's argument is based on the alleged availability of an "ultra pulse" feature, which was described at trial as being similar to AMO's technology (Tr. at B-25:10-21). Randall Olson, M.D., testified that because he used a specific AMO feature called "Whitestar," which generated power in short bursts, he did not need to use occlusion mode. (Tr. at B-24:13-24.) According to Alcon, Olson's testimony establishes that Whitestar, and Alcon's own similar ultra pulse, are acceptable non-infringing substitutes for the '240 invention. (D.I. 331 at 9-10.) Alcon also argues that AMO's damages expert, Jonathan Putnam, gave misleading testimony about the behavior of the market because he ignored the impact of ultra pulse and attributed increased sales by Alcon to occlusion mode instead. (Id. at 13-19.) These arguments depend on ultra pulse being an acceptable substitute, which in turn depends on whether the market is defined to include any method of reducing injury from wound burn, as Alcon contends, or includes methods of automatically controlling ultrasound power. The jury was presented with testimony from Putnam that doctors who demanded the infringing occlusion mode would only consider products that allowed for automatic control of power, and that the AMO machines were the only such alternative. (Tr. at D-110:24-111:18.) Despite Olson's testimony that he did not use occlusion mode, the jury was entitled to credit Putnam's interpretation of the market, in which, for some percentage of doctors, the only acceptable substitute machines would be those with occlusion mode. Putnam

conceded that this would be less than half of all doctors (Tr. at D-111:25-115:19), and so lost profits were requested for only a fraction of Alcon's sales.

Because the jury was entitled to credit Putnam's interpretation of the market and the results of his analysis, Alcon's motion for judgment as a matter of law that lost profits should not be awarded, or, alternatively, for a new trial will be denied.

Alcon also seeks a new trial based on the argument that the jury's award of lost profits depends on implicit findings of demand for occlusion mode and AMO's capacity to meet such demand and that those findings are against the weight of the evidence. (D.I. 331 at 20-26.) First, on the demand issue, Alcon argues that the sales trends discussed by Putnam do not show any increase due to occlusion mode. (Id. at 21-26.) Putnam, of course, disagreed. (Tr. at D-113:17-18.) Moreover, the sales trend is only part of the evidence of demand. Both AMO and Alcon advertised the feature. (PTX 226; PTX 278; PTX 284; PTX 285; PTX 289; PTX 310; Tr. at D-100:16-101:10.) Doctors promoted its use. (Tr. at B-23:2-19, C-207:15-17.) Finally, Alcon surveyed doctors and found that they considered the feature to be useful. (PTX 34.) Thus, the conclusion that there was demand for occlusion mode was not against the weight of the evidence.[4]

Second, on the capacity issue, Alcon contends that AMO would not have been able to make the additional sales for which it received lost profits, because this would have doubled AMO's sales and would have required AMO to sell in markets where it

---

[4]Alcon's assertion that Putnam's testimony on demand was misleading because he did not consider the AMO Diplomax machine was addressed during cross-examination. The jury could permissibly rely on his explanation that he did not consider the Diplomax to be in the relevant market (Tr. at D-180:13-181:23).

17

had no sales presence. (D.I. 331 at 26). However, AMO's Chief Marketing Officer testified that AMO had the capacity to make these sales with its current sales force (Tr. at C-252:3-253:5), and Putnam testified similarly (Tr. at D-108:12-18). Again, the conclusion that AMO had sufficient marketing capacity was not against the weight of the evidence.

Accordingly, Alcon's motion for a new trial based on the jury's award of lost profits will be denied.

### 2. Reasonable Royalty for the '240 and '765 Patents

Alcon also seeks a new trial because the jury's award of reasonable royalty damages for infringement of the '240 and '765 patents is not supported by evidence showing that the royalty base should include the entire value of the AdvanTec Legacy and Infiniti machines. (D.I. 331 at 27-29.) According to Alcon, the royalty base should be limited to the value of the upgrades that enabled occlusion mode (for the '240 patent) and the value of the fluidics cassettes (for the '765 patent) because these are the new features that embody the inventions. (Id. at 27.) This argument fails because for both the '240 and '765 patents, the asserted claims cover elements found throughout the phacoemulsification devices, including, for example, handpieces and pumps. ('240 patent at 7:33-57, 7:62-8:2, 8:18-37; '765 patent at 6:3-27, 6:44-63.) Therefore, the royalty base presented to the jury was proper.

Accordingly, Alcon's motion for a new trial based on the jury's award of reasonable royalties will be denied.

G.    Enhanced Damages and Attorneys' Fees

Based largely on the jury's determination of willful infringement, AMO seeks enhanced damages and attorneys' fees. After review, I agree that this is an exceptional case, that the damages award should be trebled, and that reasonable attorneys' fees should be awarded.

In exceptional cases of patent infringement, a court "may increase the damages up to three times." 35 U.S.C. § 284. This provision reflects "the tortious nature of patent infringement and the public interest in a stable patent right." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997). Enhanced damages are appropriate if the "infringer is guilty of conduct upon which increased damages may be based," and if the "totality of the circumstances" supports an enhanced award. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)). While the court must decide whether enhanced damages are appropriate, *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1581 (Fed. Cir. 1992), a jury's finding of willful infringement is relevant to that decision, *see Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1348 (Fed. Cir. 2004). Furthermore, "[w]here a jury has found willful infringement, a district court must provide reasons for refusing to enhance damages [and] . . . must take care to avoid second guessing the jury or contradicting its findings." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 967 F. Supp. 861, 863 (E.D. Va. 1997) (citing *Jurgens*, 80 F.3d at 1572-74).

19

Here, the jury's conclusion that infringement was willful shows that Alcon was guilty of conduct upon which increased damages may be based. The "totality of the circumstances" may be addressed by considering certain factors suggested by the Federal Circuit in *Read*, 970 F.2d at 827 (listing nine factors). In this case, I find the most relevant *Read* factors to be: (1) "whether the infringer deliberately copied the ideas or design of another;" (2) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;" and (3) "defendant's size and financial condition." *Id.*

First, as discussed in Section IV.E, AMO presented evidence that Alcon copied the '240 and '765 inventions. Alcon not only had access to AMO's Sovereign machine (Tr. at D-25-29), it prepared reports on the Sovereign's operation (PTX 127; PTX 132), photographed the fluidics system (PTX 132 at 7), and changed its own fluidics design after viewing the Sovereign (Tr. at E-58-59; PTX 124). This evidence of copying, which supported the jury's finding of willfulness, also supports an enhanced damages award.

Second, AMO presented evidence that Alcon's investigation of the '240 patent was less than complete and competent (Tr. at E-103-05, G-21-23, G-60-61) and that Alcon continued to develop its infringing system before the opinion letter was received (PTX 46; PTX 94). This lack of an appropriate investigation, which again supported the jury's finding of willfulness, also supports an enhanced damages award.

Third, according to Alcon's SEC filings for calender year 2004, Alcon's sales of cataract surgery products was about $1.5 billion. (D.I. 313, Ex. 2 at 21.) For four years of infringement, the jury awarded about $94.8 million. Considering the annual sales of

cataract surgery equipment, which appears in large measure to consist of sales of the infringing devices and consumables (*id.* at 10, Ex. 2 at 21), an enhanced award is appropriate to deter and punish willful infringement.

Based on the evidence of copying of both the '240 and '765 inventions, the lack of appropriate investigation of the '240 patent, and the amount of Alcon's phacoemulsification sales, I conclude that the damages award should be trebled.[5]

In exceptional cases of patent infringement, a court may also "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An award of attorneys' fees and costs is typical in cases of willful infringement. *See, e.g., Knorr-Bremse*, 383 F.3d at 1347. In fact, a trial court must explain why fees were not awarded "in the face of its express finding of willful infringement." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). "[T]he Court may consider the factors relevant to an enhanced damages award in determining whether attorneys' fees should be granted." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 391 (D. Del. 2004).

The evidence of willful infringement already noted supports an award of reasonable attorneys' fees and costs in this case.[6]

---

[5]Because of an issue that arose during trial concerning marking under 35 U.S.C. § 287, the parties agreed to a post-trial hearing before the court. For the amount of the judgment, see the accompanying Post-Trial Findings of Fact and Conclusions of Law issued in this matter today.

[6]I have already stated that the fees and costs associated with the hearing on the marking issue will be assessed to Alcon. (Tr. at G-15-16.)

H.    Permanent Injunction

After a patent is found to be valid and infringed, the "general rule" is that the

court will issue an injunction against future infringement pursuant to 35 U.S.C. § 283.

*Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989).  The past willful

infringement of the '240 and '765 patents shows a likelihood of future harm that justifies

a permanent injunction in this case.  Therefore, AMO's motion for permanent injunction

will be granted.  The parties agree that the injunction may only apply to the parties and

limited non-parties according to Fed. R. Civ. P. 65(d).  (D.I. 315 at 22-23; D.I. 321 at 1.)

The injunction will cover not only each of the devices found to infringe the '240 and '765

patents, but also others "not more than colorably different" from those devices.  *See Int'l*

*Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004).  The parties shall

confer and, within ten days, submit a form of judgment order giving effect to the

foregoing conclusions.

I.    Stay of Injunction

Alcon seeks to stay the injunction pending appeal to the extent that it covers

future infringement of the '765 patent.[7]  In considering whether to grant a stay, the court

must apply four factors:

> (1) whether the stay applicant has made a strong showing that he is likely
> to succeed on the merits;
> (2) whether the applicant will be irreparably injured absent a stay;
> (3) whether issuance of the stay will substantially injure the other parties
> interested in the proceeding; and
> (4) where the public interest lies.

---

[7]Because the feature that infringed the '240 patent has been removed from its
machines, Alcon does not move for a stay of the injunction to the extent that it covers
future infringement of the '240 patent.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). "Each factor . . . need not be given equal weight." *Id.* "When harm to the applicant is great enough, a court will not require a strong showing that applicant is likely to succeed on the merits." *Id.* at 513 (citation omitted). Importantly for this case, "provided the other factors militate in movant's favor," a stay is appropriate where the movant can "demonstrate a substantial case on the merits," even without showing a strong likelihood of success. *Id.* (citation omitted).

Taking the factors in reverse order, Alcon has shown that the public interest strongly favors granting a stay. Alcon's sales of the Infiniti device represent "approximately 75% of the new phacoemulsification machines now sold in the United States." (D.I. 315 at 10, Ex. D at ¶ 3.) If that share of the market cannot be replaced in a timely manner, surgeons and patients will be left without important medical equipment. The evidence at trial showed that AMO certainly could not fill a market-share gap of that magnitude, nor does it appear that any other supplier or combination of suppliers could. Even if AMO or another supplier could immediately step in, Alcon contends that noninfringing safety features of the Infiniti would be forced off the market by an injunction. (*Id.* at 11.) While AMO contends that its Sovereign machine is also safe, it does not contend that it can replace these additional features. In short, it is clear that it will take time for the market to adapt.

On the issue of injury to the nonmoving party, AMO claims that it will be irreparably harmed by a stay because it will lose market share, reputation, and the right to exclusivity protected by the patent laws. (D.I. 325 at 9-10.) However, AMO did not

23

show that it could have made additional sales but for Alcon's infringement of the '765 patent because it conceded that the fluidics system protected by that patent does not drive demand for the Alcon machines. Accordingly, AMO was adequately compensated for past infringement by a reasonable royalty on the infringing devices. I am persuaded that AMO's market share will not likely be damaged by a stay because the demand for the Infiniti devices is not driven by the patented fluidics feature found in AMO's Sovereign. While AMO will lose its right to exclusivity pending appeal and may suffer some injury to its reputation as a company that enforces its patent rights, a temporary stay is not likely to cause irreparable harm.

By contrast, denying the stay will certainly cause Alcon to lose, for some period of time, all of its Infiniti sales, which account for approximately 75% of the sales of new phacoemulsification machines in the United States. (D.I. 315 at 10, Ex. D at ¶ 3.) In 2004, sales of the Infiniti totaled over $30 million in the United States and over $60 million worldwide. (Id. at 17, Ex. D at ¶ 8.) Additional revenue would be lost from the associated sales of cassettes and other consumables. (Id.) If Alcon were to prevail on appeal, those losses could not be compensated.

Finally, while Alcon has not made a strong showing of likelihood of success on appeal, it has shown that it has a substantial case. Alcon points specifically to the construction of the claim terms "disposed along" and "chamber shape means" and to the lack of evidence supporting infringement. (Id. at 5-10.) As AMO notes, these issues have been argued already, and the finding of infringement is based on the jury's factual determinations. (D.I. 325 at 1-8.) But Alcon at least has a substantial case on

appeal, and a stay is warranted while the Federal Circuit reviews the many vigorously contested issues in the case.

Because three of the four factors favor Alcon, and because Alcon has shown that it has a substantial case on appeal, Alcon's motion for a stay of injunction to the extent that it covers infringement of the '765 patent will be granted.  In effect, this results in a compulsory license for the '765 patent while the appeal is pending, because, if Alcon loses its appeal, it will be required to pay reasonable royalty damages on the infringing sales made during that time.  Alcon will post a bond in the amount of $1.8 million, corresponding to one year's royalties for '765 patent infringement according to AMO's damages expert,[8] as security during the pendency of the appeal.[9]

## V.    CONCLUSION

For the reasons set forth herein, I will deny Alcon's Motions for:

(1) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I. 337);

(2) Judgment as a Matter of Law of Obviousness of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I. 339);

---

[8]The royalty requested by AMO at the trial is an appropriate basis for this bond because the jury awarded 98% of the amount requested for '765 patent royalties (D.I. 302; Tr. at E-155:23-156:1).  *See* Post-Trial Findings of Fact at ¶¶ 12-13.  Thus, the bond value is only slightly greater than the damages award for one year.  Also, Alcon itself proposed the bond amount.  (D.I. 315 at 20.)

[9]AMO did not ask for leave to submit supplemental material in support of its motion for injunction, and so Alcon's Motion to Strike the submission (D.I. 371) will be granted.  In any event, AMO's allegations about statements made to Alcon customers would not change my conclusion that a stay is appropriate in this case.  AMO's Motion for Post Trial Discovery related to these allegations (D.I. 373) will be denied.

(3) New Trial Based on the Exclusion of a Rebuttal Witness (D.I. 343);

(4) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '765 Patent or in the Alternative, a New Trial (D.I. 341);

(5) Judgment as a Matter of Law Regarding the Jury's Willfulness Finding or in the Alternative, a New Trial (D.I. 335); and

(6) Judgment as a Matter of Law on Damages or in the Alternative, a New Trial (D.I. 334).

I will grant AMO's Motions for Attorney Fees and Enhanced Damages (D.I. 312) and for a Permanent Injunction (D.I. 310). The parties shall confer and, within ten days, submit a form of judgment order for the permanent injunction giving effect to the foregoing conclusions.

I will also grant Alcon's Motion for a Stay of Injunction pending appeal (D.I. 316).

Finally, I will grant Alcon's Motion to Strike AMO's Supplemental Submission (D.I. 371) and will deny AMO's Motion for Post Trial Discovery (D.I. 373). An order will follow.