IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED MEDICAL OPTICS, INC.,<br>a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-1095-KAJ |
| | ) | |
| ALCON LABORATORIES, INC.,<br>a Delaware corporation, and<br>ALCON MANUFACTURING, LTD,<br>a Texas Limited Partnership. | ) | |
| | ) | |
| Defendants. | ) | |

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Richard L. Horwitz, Esq., David E. Moore, Esq., Potter Anderson & Corroon LLP,
Hercules Plaza, 6th Floor, 1313 North Market Street, P.O. Box 951, Wilmington,
Delaware 19899; Counsel for Plaintiff.
    Of Counsel:  A. James Isbester, Esq., Gillian W. Thackray, Esq., Isbester &
        Associates, 3160 College Avenue, Suite 203, Berkeley, California 94705.

Josy W. Ingersoll, Esq., Melanie K. Sharp, Esq., Young Conaway Stargatt & Taylor,
LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware
19801; Counsel for Defendants.
    Of Counsel:  Robert G. Krupka, Esq., Kirkland & Ellis LLP, 777 South Figueroa
        Street, Los Angeles, California 90017;
            Linda S. Resh, Esq., Kirkland & Ellis LLP, 200 East Randolph
        Drive, Chicago, Illinois 60601.

December 16, 2005
Wilmington, Delaware



JORDAN, District Judge

## I.    INTRODUCTION

American Medical Optics, Inc. ("AMO") brought this patent infringement suit against Alcon Laboratories, Inc. and Alcon Manufacturing Ltd. (collectively, "Alcon"). After a two week trial between April 25 and May 6, 2005, the jury found that Alcon had willfully infringed two of AMO's patents, U.S. Patent Nos. 5,700,240 (issued Dec. 23, 1997) (the "'240 patent") and 6,059,765 (issued May 9, 2000) (the "'765 patent") and that neither of the patents were invalid.  For infringement of the '240 patent, the jury awarded lost profit damages of $45.7 million and reasonable royalty damages of $42.6 million.  For infringement of the '765 patent, the jury awarded reasonable royalty damages of $6.5 million.

Several days into the trial, after AMO's damages expert had already testified, a question was posed by AMO's counsel to one of its witnesses that, for the first time in the litigation, raised the issues of whether AMO had marked its products in a manner consistent with 35 U.S.C. § 287 and, if not, what would be the appropriate start date for the calculation of damages.  (*See* Trial Transcript ["Trial Tr."] at E-24:18-25.)  After consultation with counsel, it was agreed that the most appropriate way to handle these issues would be to continue the trial without raising them to the jury, and then hold a one day bench trial to decide whether the damages start date should be changed and, if so, how the damages should be adjusted.  That supplemental trial on damages was held on June 21, 2005, and the following are my findings of fact and conclusions of law.[1]

---

[1]AMO has moved to strike Alcon's response to its proposed findings of fact and conclusions of law because the response uses blocks of single-spaced text in violation

## II.    FINDINGS OF FACT[2]

A.    The Issue of Marking Under 35 U.S.C. § 287

1. AMO filed the complaint in this action on December 3, 2003. (Docket Item ["D.I."] 1; D.I. 25.)

2. None of the pleadings in this case mentioned notice or marking under 35 U.S.C. § 287. (D.I. 1; D.I. 10; D.I. 25; D.I. 34.)

3. In response to Alcon's discovery requests, AMO disclosed that its manuals and product inserts ("Directions for Use" or "DFUs") were marked with the numbers of the '240 and '765 patents. (D.I. 318 at 3-4.)

4. Issues of actual or constructive notice, marking, and the start date for damages are not mentioned in the Joint Proposed Pretrial Order (D.I. 220) filed by the parties on Mar. 21, 2005.

5. AMO did not mark patent numbers directly on its products but put those numbers "in the operators manual." (Trial Tr. at E-24:18-25.)

6. The AMO manuals are delivered in a wrapper that is shrink-wrapped to the shipping pallet with the components of AMO's Sovereign device. (June 21, 2005

---

of local rules. Alcon argues that these blocks are quotations, and so its response complies with the rules. This argument over what amounts to a few pages (the amount added to Alcon's response if the blocks were double-spaced) did not justify another full round of briefing. AMO's Motion to Strike (D.I. 358) is denied.

[2]Throughout these Findings of Fact and Conclusions of Law, I have adopted without attribution language suggested by one side or the other in this dispute. In all such instances, the finding or conclusion in question has become my own, based upon my review of the evidence and the law.

Hearing Transcript ["June Tr."] at 108:15-20.)  When packaged in this way, the patent numbers are not visible.  (June Tr. at 109:3-13.)

    7.  AMO made no assertions of infringement of the '240 or '765 patents against Alcon before the filing of this lawsuit.  (Trial Tr. at E-140:23-141:12.)

    B.    Trial Testimony on Damages and the Jury's Verdict

    8.  The reports of AMO's and Alcon's damages experts, Jonathan Putnam and Julie Davis respectively, both used a damages start date of August 2001 for the accused Alcon AdvanTec Legacy system and August 2003 for the accused Alcon Infiniti system.  (D.I. 318 at 4-5.)

    9.  At trial, Putnam testified that AMO should receive approximately $76 million in lost profit damages for infringement of the '240 patent.  (Trial Tr. at E-124:22-125:1.)

    10.  Putnam also testified that AMO should receive approximately $71 million in reasonable royalty damages for infringement of the '240 patent.  (Trial Tr. at E-149:1-4.)

    11.  The jury awarded AMO $45.7 million in lost profit damages and $42.6 million in reasonable royalty damages for infringement of the '240 patent.  (D.I. 302.)  These amounts are almost exactly 60% of those given in Putnam's testimony.

    12.  At trial, Putnam testified that if lost profits were awarded for the '240 patent infringement, AMO should receive approximately $6.7 million in reasonable royalty damages for infringement of the '765 patent.  (Trial Tr. at E-155:23-156:1.)

    13.  The jury awarded AMO $6.5 million in reasonable royalty damages for infringement of the '765 patent.  (D.I. 302.)  This is about 98% of the amount given in Putnam's testimony.

## III. CONCLUSIONS OF LAW

### A.    Marking Under 35 U.S.C. § 287 and the Alleged Waiver

1. The patent statute provides, under 35 U.S.C. § 287, that a patentee may give notice that an article is patented "either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent," or, when the nature of the article prevents marking the article itself, "by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice." 35 U.S.C. § 287. The statute also states that, "[i]n the event of failure to so mark, no damages shall be recovered by the patentee . . . except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." *Id.*

2. AMO's phacoemulsification devices were not themselves marked with the patent numbers. (Trial Tr. at E-24:18-25.) Instead, the patent numbers were included in the manuals sent with the devices, and these manuals were not visible on the products as packaged. (*Id.*; June Tr. at 108:15-20, 109:3-13.) When the patented article is a tangible item that can be marked, the notice needs to be placed on the article. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993). It is not sufficient to mark patent numbers in an owners manual, *Metrologic Instruments, Inc. v. PSC, Inc.*, CA No. 99-4876, 2004 WL 2851955, at *20-*21 (D.N.J. Dec. 13, 2004), or in a brochure, *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 868 (C.D. Cal. 1994). Because AMO's devices were not marked according to the statute, AMO can receive no damages for infringement that occurred before December

4

3, 2003, the date that Alcon received notice of its infringement from the initiation of this lawsuit.

3. AMO alleges that Alcon has waived the issue of constructive notice under § 287 because it was not raised before trial and was not included in the pretrial order. However, the limitation on damages under § 287 is not a defense. *Motorola v. United States*, 729 F.2d 765, 769-70 (Fed. Cir. 1984). Rather, the burden remains on the patentee to show that notice, either constructive notice from marking or actual notice, has been given in order to support its damages claim. *Id*. at 770.

4. Therefore, while Alcon failed to raise the issue before trial, it has not waived it. AMO raised the issue itself on its direct examination of one of its own witnesses. When I inquired about the implications of the question, it conceded that the question was asked to establish notice for § 287 purposes (*see* Trial Tr. at E-189:23-191:1). I conclude that Alcon's failure to raise the issue was unintentional (*see* Trial Tr. at G-5:5-7), and, while AMO may have believed that the issue was not going to be addressed at the trial, Alcon's tardiness does not justify a windfall to AMO of tens of millions of dollars from an earlier damages start date.

5. Since AMO has failed to prove notice prior to December 3, 2003, the damages award from the jury verdict, based on earlier start dates, needs to be adjusted.

B.   Adjustment to the Damages Award

6. Since the jury awarded lost profit and reasonable royalty damages in amounts close to those given by AMO's damages expert, I conclude that they likely followed his

5

methodology and discounted the award.  The jury awarded AMO $45.7 million in lost profit damages and $42.6 million in reasonable royalty damages for infringement of the '240 patent (D.I. 302), and these amounts are almost exactly 60% of those given in Putnam's testimony.  For the '765 patent, the jury awarded AMO $6.5 million in reasonable royalty damages (D.I. 302.), and this is approximately 98% of the amount given in Putnam's testimony.

7.  Accordingly, I will adopt Putnam's damages model, and adjust the amounts to reflect the discounts apparently applied by the jury.

8.  In the separate bench trial on damages, Putnam adjusted his damages model to the December 3, 2003 start date (June Tr. at 21:17-25, 31:16-20), yielding the following amounts:

For the '240 patent, lost profits, $62.5 million;

For the '240 patent, reasonable royalty, $46.1 million;

For the '765 patent, reasonable royalty, $6.3 million.[3]

9.  Adjusted by the discount rate inferred from the jury's award, the proper damages sums are:

For the '240 patent, lost profits, $37.5 million;

For the '240 patent, reasonable royalty, $27.6 million;

For the '765 patent, reasonable royalty, $6.2 million.

10.  The total adjusted damages, as of the date of the jury's verdict, May 6, 2005, is $71.3 million.

---

[3]These amounts do not include any prejudgment interest.  (June Tr. at 32:4-5.)

11. Pursuant to my conclusion on enhancement of damages, set forth in the Memorandum Opinion on post-trial motions separately issued in this matter today, the adjusted award will be trebled to $213.9 million.

C.    Sales of Handpieces and Packs

12. In his damages model, Putnam included the sales of consumables, i.e., handpieces and packs, made after December 3, 2003, for use with phacoemulsification devices sold before that date. (June Tr. at 80:17-81:2.)

13. Alcon contends that these sales, which account for $23.6 million of damages, should not be included because they will be used with machines that are themselves not the basis of the damages award. (D.I. 332 at 2-7.) According to Alcon, these consumables are replacement parts, and so selling them amounts to repair and service of machines sold before the damages start date. *See Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1555 (Fed. Cir. 1997).

14. However, the sale of these consumables is not repair or service of previously sold devices. Rather, their continued sale is infringement according to the jury's verdict. Thus, those sales made after December 3, 2003 are properly the basis for damages.

**IV.    SUMMARY OF CONCLUSIONS**

To summarize, for the reasons expressed herein, the jury's damages award for infringement of the '240 and '765 patents will be adjusted to $71.3 million. Pursuant to the accompanying Memorandum Opinion on post-trial motions, this award will be

7

trebled to $213.9 million.  The parties shall confer and, within ten days, submit a form of judgment order giving effect to the foregoing conclusions.

An order will follow.